## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHRISTINE MCLAUGHLIN,
CRYSTAL VANDERVEEN, and
JUSTIN LEMBKE, Individually and on
behalf of all others similarly situated,

      Plaintiff,

                                Case No:  3:22-cv-00059-HES-JBT
                                CLASS ACTION

v.

SELECT REHABILITATION LLC and
SELECT REHABILITATION INC.,

      Defendants.
_____.

### PLAINTIFFS' AMENDED HYBRID FLSA SECTION 216B COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiffs, CHRISTINE MCLAUGHLIN, CRYSTAL VANDERVEEN and JUSTIN LEMKE,  individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, pursuant to 29 U.S.C. 216(b), of the Fair Labor Standards Act (the "FLSA") sues Defendants, SELECT REHABILITATION LLC, and SELECT REHABILITATION INC., (hereinafter jointly referred to as "SELECT" and/or "Defendants") for willful violations of the

FLSA, and violations of the Illinois state overtime wage law at 820 ILCS 105/4a, and state as follows:

## <u>INTRODUCTION</u>

1.      Defendants in this case have willfully FAILED to pay overtime wages to hourly-paid, non-exempt **Program Managers (PM) (aka Directors of Rehab), Therapists, Therapy Assistants (COTA and PTA), Speech Language Pathologists (SLP) and other hourly paid employees** working under various job titles who have been permitted to suffer to work off the clock in order to fulfill and handle required job duties and responsibilities in positions where Defendants know such employees working in these positions were working off the clock overtime hours in efforts to meet all company expectations, job requirements and avoid suffering disciplinary action, including but not limited to termination of their employment.  All the members of the putative classes proposed herein were paid on an hourly rate of pay and classified by Defendants as non-exempt employees.

2.      Plaintiffs herein commence this legal action individually and collectively against Defendants for willful violations of federal wage and hour laws and related regulations on behalf of all similarly situated current and former employees of Defendants who worked anytime in the preceding three (3) years to the present and continuing.

3.      Plaintiff Crystal Vanderveen likewise commences this related state law class action individually and on behalf of all other similarly situated employees who worked in the state of Illinois, and also asserts her individual claims and those of all opt in Plaintiffs from the state of Illinois for violations of the IMWL and seeks recovery of treble damages and a penalty of 5% for each month such wages are and remain past due.

4.      Pursuant to a national, common policy and plan, Plaintiffs and the class or classes of similarly situated current and former employees who worked under the titles of: Program Manager (hereinafter "PM"), Director of Rehab, Physical Therapist (RPT), Physical Therapy Assistant (PTA), Occupational Therapist (OTR), Certified Occupational Therapy Assistant (COTA), Speech Language Pathologist (SLP), Rehab Tech or other job titles used to describe persons performing similar, hourly, non-exempt positions working from approximately 1,827 to 2,300 locations or offices in 43 states in the United States of America and its territories, suffered to work off the clock and without being paid overtime premiums or any pay for such compensable hours Defendants knew were being worked because of a scheme to avoid overtime wages and save many millions of dollars in labor costs; thus maximizing profits.

5.      Defendants are no stranger to the claims of the Plaintiffs and all others who eventually opt into this action and consent to join as party plaintiffs given the related California Class action lawsuit for all hourly non-exempt employees already commenced against it this year, styled:  *RATI GANDHALES, V. SELECT REBILATIONS LLC,* Case N0 20CV002240, in the Superior Court of the State of California, County of Monterey.

6.      Plaintiffs, and the class of similarly situated employees, were unlawfully not compensated for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendants to evade the overtime state and federal wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiffs and all other similarly situated present and former employees.

7.      While Defendants did have some system for hourly employees to clock in and out their work hours, Defendants maintained an unenforced and fictitious policy, as many employers state that "overtime" has to be pre-approved; meanwhile, and simultaneously, maintained a very real De Facto policy that all such employees are to "do whatever it takes to get the job done" and complete all their job duties including specifically, working off the clock overtime hours as needed and required.

8.      Defendants absolutely and indisputably know that Program Managers, Therapists, Pathologists and others performing similar duties under various job titles routinely worked overtime hours off the clock.

9.       Not only were managers, directors and/or supervisors well informed of these additional off the clock hours being routinely and pervasively performed, and thus Defendants had actual knowledge of same, but managers and/or directors and others in management encouraged and even pressured program managers and therapists to work as many overtime hours as needed off the clock to meet their productivity goals, to complete all their job duties and the required reporting forms and medical notes.

10.     Defendants' managers and superiors over the Plaintiffs and those similarly situated in the proposed putative classes who themselves had worked in these same positions, also worked overtime hours off the clock and thus are well aware that working more than 40 hours in the workweek was necessary to complete these job duties and responsibilities and to avoid the risk termination of their employment.

11.     Moreover, Defendants here never foreclosed Plaintiffs and all others similarly situated from accessing the office, computer systems and data bases

outside the standard or regular business hours or on weekends to prevent and preclude off the clock work.

12.     Indeed, Defendants knew that Plaintiffs McLaughlin, Vanderveen, and all Program Managers all over the U.S. routinely accessed systems, databases and programs, including emails while off the clock, and while away from the office including on weekends and using a company provided laptop. Defendants similarly knew that Therapists like Plaintiff Lembke, were accessing Defendants' programs, software and systems on office computers and tablets while off the clock and even while on the premises, and management saw them and other Therapists routinely doing the same well after they finished treating their last patients, and even into the evening hours.

13.     Defendants openly turned a "blind eye" to all the off the clock work for numerous reasons, while pressuring, coercing, intimidating, and encouraging Program Managers and Therapists to work as many hours as necessary to hit their productivity goals and complete their job duties.

14.     Defendants have willfully failed to pay Plaintiffs, and all similarly situated persons, in accordance with the Fair Labor Standards Act (FLSA), and as to all employees in Illinois, pursuant to the Illinois Minimum Wage Law (IMWL). Specifically, Plaintiffs and the similarly situated collective or class members were

not paid time and one half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid a premium for all overtime hours worked.

15.    Plaintiffs, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA and the IMWL (which  follows the FLSA), and the Defendants' pay practices are not only intentionally and willfully in clear conflict with these laws and related regulations, but are also grossly UNFAIR such as to be akin to the intentional and willful theft of wages from many thousands of employees across the United States where Defendants maintain offices and operates in upwards of 2,300    locations.    See    Defendants'    Press    release    at: https://www.selectrehab.com/press-releases/2020-12-01.

16.    Regardless, Plaintiffs and all those similarly situated were not paid on a salary basis and thus not subject to the administrative, executive or any exemptions under the FLSA or the IMWL such that Defendants were required to have paid them premiums for all overtime hours they knew or should have known were worked in each and every workweek.

17.    In this pleading, "Defendants" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, related organization,

parent corporation or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

18.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion.  Plaintiffs reserve all rights to plead in the alternative.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

20.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

21.     This Court has Supplemental Jurisdiction over the Illinois State Law claims wage claims and thus the Rule 23 class action for all others similarly situated pursuant to 28 U.S.C. §1367.

22.     The Court has simultaneous jurisdiction over the Collective Action Allegations and the Class Action Allegations. See *Calderone, et. al. v. Scott,* No. 2:14-cv-00519-JES-CM (11th Cir. Sept. 28, 2016) (holding that "a § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding.").

23.     This Court has personal jurisdiction over this action under Florida's Long Arm Statute F.S. section 48.193(2) because the Defendants continuously conduct substantial business in this District at numerous fixed offices or locations, and the damages at issue occurred in this District.  Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because Plaintiff McLaughlin resides in this district and because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

24.     Plaintiff, CHRISTINE MCLAUGHLIN resides in Jacksonville, Florida.  She was hired by Defendant in October 2019, as dual Physical Therapist and "Program Manager" (also labeled by Defendant as Program Manager- PT) and assigned to work at the Defendant's Jacksonville rehab center or office located at 7723 Jasper Avenue, Jacksonville, FL 32211; location #2209, and called and operated as "First Coast Health & Rehab Center".

25.     Plaintiff McLaughlin has been paid on a semi-monthly basis (2 times per month), and strictly on an hourly pay basis, currently at $46.00 per hour.

26.     Plaintiff McLaughlin's primary job duty as a Program Manager, aside from being required to treat patients for upwards of 4 hours per day (40% productivity) was to perform numerous job duties assisting with the performance

of other administrative duties, including any as delegated or required by as assigned by the location and regional manager.

27.    Plaintiff McLaughlin and the program manager position did not involve making decisions related to the hiring, firing, and disciplining of employees.

28.    Plaintiff McLaughlin, like the other Program Managers, routinely worked overtime hours during the work weeks throughout their employment without regard to whether they should have been paid a premium for all the overtime hours worked.

29.    McLaughlin stepped down from the role of the Program Manager in December 2021 and then worked as a staff Physical Therapist until her voluntary departure from the company in February 2022.

30.    Plaintiff CRYSTAL VANDERVEEN is a resident of Illinois. VANDERVEEN has worked for Select Rehabilitation since approximately June 2017 to the present as a Program Manager (PM)-Speech Language Pathologist (SLP) working at the South Suburban Rehab Center in Homewood, Illinois.

31.    At all times material, Plaintiff Vanderveen worked for Defendants since 2017 as an hourly paid, non-exempt employee performing speech language

therapy at Defendants' facilities, or facilities Defendant staffs, operates and manages, in addition to performing all her job duties as a Program Manager.

32.     At all times material, Plaintiffs, and all others similarly situated were employees of Defendants during the term of their employment and within the preceding 3 years to the present as contemplated by 29 U.S.C. § 203.

33.     Plaintiff Vanderveen at all times working for Defendants, was an employee as defined by the IMWL.

34.     Defendants classified Plaintiffs and all others similarly situated as non-exempt, hourly paid employees.

35.     Plaintiffs were paid a base hourly rate of pay, and not a salary, and upon information and belief all other PM's, Therapists and Pathologists were paid as hourly, non-exempt employees during the 3 years preceding the filing of this complaint.

36.     Upon information and belief some newly hired PMs hired after January 2021 were paid on a salary basis and classified as exempt employees; but the majority of PM's currently employed remain as hourly, non-exempt employees.

## DEFENDANTS SELECT REHABILITATION LLC AND SELECT REHABILITATION INC.

37.     Defendant, SELECT REHABILITATION LLC (hereinafter Defendant and/or "SRLLC"), is a Foreign (Delaware) For Profit Limited Liability

Corporation, with its principal place of business located at 2600 Compass Rd, Glenview, IL 60026, and who all times material hereto, has routinely and consistently conducted business in the State of Florida through its fixed numerous offices and locations, including in this district.  Defendant may be served through its Registered Agent for service of process, CT Corporation System, at 1200 South Pine Island Road, Plantation, Florida 33324.

38.     Defendant Select Rehabilitation Inc. (hereinafter "SRI") is an Illinois for Profit Corporation with the same principal place of business as is the related company SRLLC and has a registered agent at C T CORPORATION SYSTEM, 208 SO LASALLE ST, SUITE 814, CHICAGO, IL 60604.

39.     Upon information and belief, SRI is an LLC member, owner and manager of SRLLC; or alternatively, SRI merged all its business and assets, including its contract rehab services with SRLLC in some form or capacity, such that SRI and SRLLC operate as a single integrated enterprise and are effectively a single employer of Plaintiffs and all others similarly situated.

40.     Upon information and belief, all unlawful pay practices alleged herein were directed, created and enforced by Defendants jointly from their single corporate office, by the same officers, managers, and owners such that they are

joint employers of Plaintiffs and all others similarly situated under the FLSA and the IMWL.

41.    Defendants purchased and acquired RehabCare from Kindred Healthcare, and thus is the Employer of all past and present employees of RehabCare and those employed with Kindred Healthcare prior to this purchase. See: https://www.selectrehab.com/press-releases/2020-12-01.

42.    As stated by Defendants on their website, Defendant is a company which "The premier provider of contract rehabilitation, as well as for nurse and therapy consulting services" and employs over 17,000 therapists in the U.S.

43.    Defendants have 2,300 facilities operating in 43 States in the US, including numerous locations in Florida and within this District.  Upon information and belief Defendants employ 1 program manager or more at each location and anywhere from 5 to 20 or more therapists (including pathologists) at these locations, even more if counting per diem therapists, such that Defendants employ nearly 10,000 or more employees whose rights are affected by this case and who are similarly situated to McLaughlin, Vanderveen and Lembke.

44.    Defendants are an employer within the definition of the FLSA, has revenues exceeding $500,000 annually and employs more than 2 persons and thus

is required by the FLSA to pay overtime premiums to Plaintiffs and all those similarly situated.

45.     Likewise, Defendants are an employer who is subject to the IMWL and the overtime pay requirements of this Illinois law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.     This FLSA section 216b collective action arises from a longstanding and continuing wrongful scheme by Defendants to: a) willfully fail to accurately and properly track and record the work hours of Program Managers and Therapists, and b) willfully refuse to pay overtime wages to a large class or classes of non-exempt, hourly paid employees who Defendants know or should have known, were working off the clock and working overtime hours without being paid for all such hours.

47.     Plaintiffs bring this suit individually, and on behalf of all similarly situated persons composed of the following Class members in either a single class of similarly situated or 2 classes of similarly situated:

**If a Single Class, All hourly paid non-exempt employees:**

> **All persons employed as Program Managers, Directors of Rehab, Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), Rehab Technicians or other persons performing similar hourly, non-exempt positions under various other job titles, and who are**

currently employed by, or were previously employed by Select Rehabilitation LLC or Select Rehabilitation Inc. in the U.S. and its territories, within the three years preceding the filing of this lawsuit to the date of trial in this action.

**If Two Classes or separate groups**: (Plaintiffs may proceed with seeking conditional certification of 2 separate classes or groups of similarly situated (CLASS A and CLASS B) as follows:

**CLASS A**: **ALL PROGRAM MANAGERS/DIRECTORS OF REHAB AS FOLLOWS:**

All persons employed as Program Managers, Directors of Rehab, or other persons performing similar hourly, non-exempt management or supervisory positions under various other job titles, and who are currently employed by, or were previously employed by Select Rehabilitation LLC or Select Rehabilitation Inc. in the U.S. and its territories, within the three years preceding the filing of this lawsuit to date of trial in this action.

**CLASS B**: **ALL THERAPISTS AND TECHS:**

All persons employed as Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), Rehab Technicians or other persons performing similar hourly, non-exempt positions under various other job titles, and who are currently employed by, or were previously employed by Select Rehabilitation LLC or Select Rehabilitation Inc. in the U.S. and its territories, within the three years preceding the filing of this lawsuit to date of trial in this action.

48. Plaintiffs are able to protect and represent the Collective or putative Class or Classes, and they are willing and able, and herein consent to participating in this FLSA collective action by the filing of this complaint and as stated herein.

49.     Plaintiffs McLaughlin, Vanderveen and Lembke are familiar with the pay practices, company policies and procedures going back to 2019 and thus each year within the relevant 3-year class period.

50.     Plaintiffs have both routinely worked more than forty (40) hours in their workweeks throughout the term of their employment with Defendant.

51.     Each day, in the beginning of the workday at approximately 8:30 am, Plaintiff McLaughlin was required to attend mandatory meetings with the facility administrator and management team.

52.     Plaintiff McLaughlin was required to be present in the office at least 40 hours of work per week, Monday to Friday, reporting no later than 8:30 am, and to work these hours at a minimum, not including meal break times.

53.     McLaughlin was required to meet productivity expectations for patient treatment for 40% for the week, meaning treating patients each day and 5 days a week, as did all other Program Managers and which took McLaughlin upwards of 20 hours per week.

54.     Thus, Plaintiff McLaughlin and all others similarly situated were left with just 20 hours in the workweek in which to attend daily, weekly, and even monthly facility meetings; perform staff scheduling, be present for conference

calls, partake in training newly hired staff and many other so-called program manager administrative duties.

55.    All these program manager job requirements (including others added on by the regional manager) were not possible to be performed and completed within 40 hours of work time per week, and Defendants were aware of this fact.

56.    Defendants even required Plaintiff McLaughlin and all other program managers to take company work laptops home 7 days per week, and even while on Paid Time Off (PTO), for the clear purpose of encouraging off the clock work.

57.    After Plaintiff McLaughlin stepped down from working as a Program Manager-RPT, she began to work for Defendants as a Physical Therapist on January 1, 2022 and was assigned a productivity requirement of approximately 85% and continued in this capacity until on or about February 10, 2022.

58.    Plaintiff Lembke was assigned a productivity requirement of 88-92% meaning that he needed to be billing out, primarily to Medicare, this % of his total weekly work hours or time as treatment, while also handling his administrative responsibilities, notes and reporting.

59.    In order to meet this productivity requirement, Plaintiff Lembke was mandated by Defendants to document and bill 8 hours of work and treat patients for 8 hours a day, and thus routinely had to work more than 40 hours in the

workweek to complete all job duties and responsibilities, including inputting and entering notes and complete the reporting requirements.

60.    However, Defendants had a strict company policy against any Therapist claiming and reporting overtime hours for any work week, even when both impossible to complete all the job requirements in the 40 hours, and even when management knew they were working off the clock and working more than 40 hours routinely and after the hours when treatment was provided to patients.

61.    Lembke informed his Program Manager and others in Management about the overtime hours needed to be performed to maintain the productivity and complete all the data entry, therapy and treatment of patients, required notes, billing and reporting requirements; but management's response is that the company policy is that no overtime can be worked on the clock, or the therapist will be subject to discipline and termination of employment.

62.    Thus Lembke, like other therapists, were left with a choice:  suffer to work off the clock overtime hours or do the work on the clock and find themselves disciplined and subject to termination of employment.

63.    From the beginning of Lembke's employment, he too was explained the **Company De Facto Policy** or rule:  do whatever you have to in order to meet

goals, complete all job duties, hit productivity requirements, and including working off the clock, but never work overtime hours on the clock.

64.     Plaintiffs Mclaughlin, Vanderveen and Lembke, for themselves, and on behalf of the putative class or classes of similarly situated who elect to opt-in to this action, claim herein that they are entitled to unpaid wages from Defendants for overtime work performed for which they did not receive overtime premium pay as required by the FLSA at time and one half their regular rates of pay.

65.     Defendants employ, upon information and belief and investigation from representations made by Defendants on their own website, upwards of 17,000 therapists working from 2300 facilities or location within 43 states.  Each of these facilities is believed to have 1 program manager, and thus with turnover, the class size just for program managers may be upwards of 3,000 employees, aside from the 17,000 to 20,000 therapists Defendants employ fully or on a PRN basis.

66.     Upon information and belief, the Program Managers in the great majority of locations are all compensated as hourly, non-exempt employees pursuant to a single and common compensation plan.  Moreover, prior to 2021, all newly hired and employed program managers were hourly, non-exempt employees.

67.     Upon information and belief, at each location, Defendants employ 5 to 20 full time or PRN therapists such that the class of similarly situated therapists may be upwards of 20,000 or more for the 3-year relevant class period.

68.     Upon information and belief, all therapists are paid on an hourly basis, and classified as non-exempt employees even to the present.

69.     Defendants have maintained a single job description for the Program Manager position on a nationwide basis and has posted such jobs within the relevant 3-year class period demonstrating the job requirements for all program managers in the U.S. are similar, if not identical.

70.     Similarly, Defendants maintain a nationwide single job description for each of the Therapist or Therapy positions.

71.     Further, upon information and belief, all persons employed as Program Managers and Therapists have been required to perform their job duties in a uniform, similar manner; all are supervised and managed according to the same national standards and required to work under uniform policies and procedures set by the Defendants applicable to all offices or locations.

72.     All Program Managers were discouraged from reporting the overtime hours worked through Defendants' De Facto Policy, including pressure from

superiors and by fear and intimidation about complaining of the off the clock hours and of being terminated.

73.     When Plaintiffs McLaughlin and Vanderveen complained of the inability to complete all job duties within a 40-hour work week, including working on weekends and outside the office hours during the week, their managers made it clear to that they either kept up and did all the work off the clock, and handled the weekend and on call duties off the clock or suffer disciplinary action.

74.     When Plaintiffs McLaughlin and Vanderveen were behind, they could not delegate their job duties and responsibilities to other employees to avoid incurring overtime hours and could not refuse to handle scheduling and staffing issues during evenings and weekends, and simultaneously were prohibited from clocking in for this work outside the office despite being required and necessary.

75.     The company's regional managers and VP's discouraged Program Managers of complaining of the overtime hours and against clocking and performing overtime work on the clock, yet pressured and encouraged them to work on weekends and as many hours as required to perform all job requirements and acknowledged they knew this off the clock overtime was required and being done.

76.     The Defendants maintain a Nation-wide and company policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked by program managers despite clear and actual knowledge program managers and therapists, including Plaintiffs, have routinely worked overtime hours which are unreported and "off the clock".

77.     Defendants maintain a strict labor budget at each office or location, tied to Medicare billing and their "productivity rates" and throughout all the Plaintiffs' employment it was made clear to them, that asking for the fictitious and illusory pre-approval for performing overtime hours on the clock not only would just be denied, but would also draw the ire of their superiors and put a target on their backs for termination of their employment.

78.     Upon information and belief, all program managers are supervised by Regional Managers and VP's who very closely monitor their performance, production and are aware when employees performed work on weekends or outside or away from the office and beyond regular business hours.

79.     The overtime wage provisions set forth in FLSA §207 apply to Defendants and Defendants admit the same.  Indeed, at all relevant times, Defendants' employee manual and company policies inform hourly paid employees such as Plaintiffs and all other program managers and therapists that

they were entitled to be paid premiums for overtime hours worked at time and one half their regular rates of pay.

80.     Plaintiffs, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

81.     Pursuant to FLSA §207, Defendants, as the employer of Plaintiffs and other similarly situated program managers and therapists was and is still required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

82.     Defendants' overtime policies were circular, and the proverbial chicken and egg type game of do not claim or seek to claim overtime without pre-approval, while simultaneously discouraging reporting or complaining about the overtime hours incurred and worked or having to work on weekends etc.

83.     Plaintiff Lembke was warned that if there was even a minute of overtime, unless pre-authorized, the time would be required to be edited off and he would be disciplined.

84.     While demanding hourly paid employees edit off and shave-off overtimes is a per se violation of the FLSA and many state overtime laws, Defendants have demanded this of therapists and program managers, including for one or more of the opt in plaintiffs in this case.

85.    Defendants discourage reporting of overtime hours and turn a "blind eye" to all the off the clock work because its primary revenue is from Medicare and the company scrutinizes all the hours and minutes of all the work performed by its staff as compared to the billing to Medicare to maximize profits.

86.    Therapists' treatment minutes are tallied and put into a program or application and then compared to their work hours and scrutinized by management. If productivity is low, meaning not treating enough patients within the assigned 40 hours of paid time, therapists are subject to discipline.

87.    Thus, Therapists (which includes all Program Managers as they are also therapists) are strongly discouraged against working on the clock for their routinely required overtime hours of work, much of which is routinely necessary in order for each person to complete the administrative work and reporting, and notes.

88.    The Company maintained a "code of silence" when it came to the issue of overtime hours and overtime wages, with literally no company meetings or discussions about the requirements of the FLSA and meanwhile, did not discipline Plaintiffs or any other program managers they clearly knew were performing work off the clock and working away from the office, including working on weekends.

89.    Defendants maintained a culture and environment of discouraging and intimidating program managers from submitting or reporting overtime hours

worked; warning they had to find a way to do all their work and keep up, sacrificing personal time, or they would be subjected to termination of their jobs.

90.    Defendants have not, throughout the relevant three (3) year class period, accurately and properly clocked, tracked or recorded the actual working hours of each program manager and all therapists in all of their facilities or locations throughout the U.S.

91.    Most program managers worked a similar schedule of five (5) days per week, typically Monday to Friday, and starting from about 8:30 a.m. or earlier, with numerous daily and weekly meetings, and expected to stay at the facility no matter what time it was until they performed all their work treating patients and acting as therapists, and handling all their management and administrative duties, work and reporting.

92.    McLaughlin and Vanderveen were also required to work 5 days a week, and even if they would have hit 40 hours on the 4th day of work for the week, were still required to complete the full 5th day of work and still yet handle all weekend and evening work required activities and yet not report more than 40 hours of work.

93.    Program Managers could not simply just say on Friday morning they hit 40 hours and thus they must go home and cease working until Monday, wherein

if they did, they would certainly have faced discipline and termination, as well as putting the health and well-being of patients in jeopardy who might not receive the therapy that was medically necessary and required.

94.     But for the overtime hours worked by program managers, including on call time, staffing and scheduling inherent in the position, the facilities would not operate properly, efficiently and patients would suffer, and that would lead to in all certainty termination of their employment.

95.     Similarly, Lembke, like all other therapists, if they failed to timely and completely input and log in all their treatment notes and reporting while doing so off the clock, not only could they be in violation of regulations and standards of professionalism, they also would be subject to termination of employment.

96.     All program managers and therapists were trained to perform their job duties and expected to perform their job duties in respectively similar manners throughout all the Select Rehab locations on a national basis.

## ALLEGATIONS FOR ILLINOIS WAGE ACT VIOLATIONS AND RULE 23 ILLINOIS CLASS ACTION

97.     Plaintiff VANDERVEEN brings and asserts her Illinois Minimum Wage Law overtime pay violations individually, and on behalf of all others

similarly situated pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf, and on behalf of the following putative class of similarly situated:

> **All persons employed as Program Managers, Directors of Rehab, Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), Rehab Technicians or other persons performing similar hourly, non-exempt positions under various other job titles, and who are currently employed by, or were previously employed by Select Rehabilitation LLC or Select Rehabilitation Inc. in the U.S. and its territories, within the three years preceding the filing of this lawsuit to the date of trial in this action.**

98.    The Rule 23 Class is so numerous that joinder of all Rule 23 Class members in this case would be impractical.   Plaintiff reasonably estimates there are 1,000 Rule 23 Class members.   Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

99.    Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Illinois class as a whole.

100.   Additionally, prosecuting separate actions by or against individual class members would create a risk of: inconsistent or varying adjudications with

respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

101.   The individual overtime claims can be small, and therefore unlikely to be adjudicated on an individual basis and thus the prospect of no adjudication is inferior to the class action alternative.

102.   Numerosity is satisfied as upon information and belief, Defendants operate and staff upwards of 32 to 60 or more locations in the State of Illinois from which they employ upwards of 1 PM and an average of 7 therapists at each location, including the following locations:   Ambassador Nursing and Rehab, Belhaven Nursing and Rehab, Berkeley Nursing and Rehab, City View Multicare Center Continental Nursing and Rehab,   Forestview Rehab and Nursing, Hope Creek Nursing and Rehab, Lakeview Rehab and Nursing, Midway Neurological Rehab Center, Momence Meadows Nursing and Rehab, Niles Nursing and Rehab, Oak Lawn Respiratory and Rehab, Parker Nursing and Rehab, Parkshore Estates Nursing and Rehab, Southpoint Nursing and Rehab, West Suburban Nursing and Rehab, Landmark of Desplaines Rehab and Nursing, Wheaton Care Center, Little Village Nursing and Rehab, Lemont Nursing and Rehab, Lakewood Nursing and Rehab, Estates of Hyde Park, Tri-State Nursing and Rehab, Landmark of Richton Park Rehab and Nursing, Kensington Place Nursing and Rehab, Countryside

Nursing and Rehab, St. James Wellness Rehab and Villas, Lincolnshire Health and Rehab, Prairie Manor Nursing and Rehab, Spring Mill Health Campus, Sheridan Village Nursing and Rehab, South Suburban Rehab Center.

103.  Common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class and are identical for all class members including:

a.  Whether Defendants violated the IMWL by failing to pay premium compensation to the Illinois Class members who worked in excess of forty (40) hours per week;

b.  Whether Defendant violated IMWL by failing to keep accurate records of employees' hours worked;

c.  Whether the Plaintiffs in the Illinois Class were willfully permitted to suffer to work off the clock and pursuant to a De Facto policy against reporting overtime hours or working overtime hours on the clock in violation of the state overtime wage laws;

d.  Whether Defendants knew or should have known that Program Managers and Therapists were working off the clock, including overtime hours without being paid for all such hours or had actual or constructive knowledge of the off the clock work;

e.  Whether the Defendants acted willfully in violation of the law such that a 3-year SOL should apply;

f.   Whether Defendants' actions and pay practices lacked a good faith basis under the Illinois Minimum Wage Law for its actions such that treble damages should be awarded;

g.  The proper measure of damages sustained by members of the Illinois Class and the restitution owed to them;

104.  Plaintiff Vanderveen's claims are typical of those of the Illinois Putative Class and including such opt in party Plaintiffs from Illinois including Renee Ramos.  Plaintiff Vanderveen, like other members of this putative class, and including party Plaintiff Ramos, routinely and pervasively throughout their term of employment within the relevant 3-year class period, suffered to work off the clock overtime hours and were subjected to Defendants' unlawful pay practices, including the De Facto policy against working on the clock when working required overtime hours.

105.  Vanderveen's job duties and responsibilities as a program manager were also typical of other members of the Illinois Class, including scheduling, staffing, reports, audits, handling patient issues, patient treatment productivity

requirements, and all other responsibilities as published in the Company job description applicable to all Program Managers.

106.   Further, Vanderveen as an OT, had similar if not identical job duties and responsibilities of all other OT's and as stated in the Company Job Description, which primarily included providing therapy for patients within her medical specialty and completing mandated treatment or therapy notes, initial evaluations and discharge summaries.

107.   All PM and Therapists were all classified as hourly, non-exempt employees, with the exception of perhaps PMs hired in 2021, which is a small minority of the PM's who comprise the putative class.

108.   Plaintiff Vanderveen will fairly and adequately represent and protect the interests of the putative members of the Illinois Class because she has no disabling conflict(s) of interest that would be antagonistic to those of the other class members, and specifically Vanderveen is a member of the Illinois Class.

109.   Plaintiff Vanderveen has retained legal counsel who is competent and experienced in class and collective action wage and hour litigation, including Illinois wage claims and other state overtime class actions.

110.   Defendants have acted on grounds that apply generally to the Illinois Class in that it has common policies and practices of: (a) refusing to pay overtime

compensation for all hours worked and permitting class members to suffer to work off the clock; (b) failing to maintain and provide accurate itemized wage statements to all members of the Illinois Class. Accordingly, injunctive and declaratory relief is appropriate for the Illinois Class as a whole.

111.   Class treatment is superior to alternative methods to adjudicate this dispute because Plaintiff Vanderveen and the similarly situated Illinois Class Employees suffered similar treatment and harm as a result of systematic policies and practices, including the unlawful pay practice of permitting them to suffer to work off the clock pursuant to a company De Facto policy, and because absent a class action, Defendants' unlawful conduct will likely continue unremedied and unabated given that the damages suffered by individual class members are small compared to the expense and burden of individual litigation.

112.   Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.  Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   See *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.,* 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

113.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

114.    Plaintiffs reallege and incorporate by reference paragraphs one (1) through Ninety Six (96) of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

115.    Defendants have willfully and intentionally engaged in a common, pattern and practice of violating the provisions of the FLSA, by failing to pay all program managers and therapists and others performing similar job duties under various job titles, the required overtime wages and premiums for all hours worked over 40 in each and every work week.

116.    Plaintiffs McLaughlin and Vanderveen and all other program managers, and hourly non-exempt managers or directors under other titles routinely worked on weekends and hours away from the office and all such time should have been counted as compensable overtime hours during each and every workweek that they and all others similarly situated worked.

117.   Plaintiff Lembke, and all other Therapists, including therapy assistants, employed under various titles and disciplines, routinely worked off the clock hours and all such time should have been counted as compensable overtime hours.

118.   Defendants knew that Plaintiffs and all other similarly situated program managers routinely performed work off the clock, both in the office and away from the office; this evening and weekend work included being on call for other staff related to scheduling and other matters in which program managers had to be able to receive and respond to emails, phone calls and text messages from other employees and which PMs were prohibited from clocking in for reporting and claiming these hours.

119.   When Plaintiffs Vanderveen and McLaughlin and all other Program managers did perform such out of the office work, their managers were informed and made aware of this off the clock work and demonstrated acquiescence and expressed their expectations that such work comes with the job, and never wrote up McLaughlin or Vanderveen and formally disciplined them for doing so.

120.   Plaintiffs McLaughlin, Vanderveen and other program managers had no means to report the times they spent dealing with out of the office communications with staff and other persons they were required to handle and

respond to, such as emails, text messages and phone calls, and which Defendants knew was going on in most of their 2,300 locations.

121.   Similarly, inherent in the staffing and scheduling responsibilities for the facilities and locations was having to perform scheduling and staffing work for the week ahead on their so-called days off on Saturdays and Sundays which McLaughlin and Vanderveen routinely did and with the knowledge of their superiors, and thus the company.

122.   Program managers were required to use personal cell phones, have their company email on their phones and expected to respond to employees when they contacted them outside of the office.  For instance, if a therapist was calling out sick, or there was a problem with a patient not scheduled with a therapist for the week ahead, if not for this weekend work patients would suffer, and the facilities would also become dysfunctional.

123.   Defendants willfully failed and refused to provide any real means for Program Managers to report these additional times and work hours, and which should have been counted as compensable time and reporting as required by the FLSA and the regulations.

124.   Defendants knew that Lembke and all other similarly situated therapists likewise were suffering to work off the clock to maintain productivity

while complying with the De Facto policy of working off the clock to complete all their job duties.

125.   The double edged sword as expressed to the therapists by Defendants' managers was that if you worked overtime hours on the clock it would destroy your "productivity" and lead to discipline or termination of employment and so the company discouraged therapists from working overtime hours on the clock as well as blatantly encouraged it and approved it; but, meanwhile and simultaneously therapists who were so loaded with having to treat patients all day long found it necessary and inherent in the job to have to then complete all their notes and reporting off the clock or risk their own licenses and also termination of employment.

126.   Plaintiffs were not permitted to and prohibited from just cancelling patients from their schedules in order to be certain the work would not put them in overtime hours or to avoid incurring necessary overtime hours.

127.   Defendants had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including program managers, therapists and other persons performing similar roles under any job titles.

128.   As Defendants failed to institute any means to account for this required on-call time for Program Managers to log in such communications, the process knowingly left Plaintiffs McLaughlin and Vanderveen, and all other similar employees, subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

129.   Defendants' conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of all Plaintiffs' and all other program managers and therapists actual working hours, resulted in a willful violations of the overtime wage law of Section 207 of the FLSA, and throughout the 3 years preceding the filing of this complaint to the present.

130.   Defendants' actions constitute permitting Plaintiffs and all other PMs and Therapists to suffer to work off the clock without being paid for all hours.

131.   The FLSA requires any employer who has actual or constructive knowledge of employees working off the clock to either cease and stop the conduct or be held liable and responsible for paying the overtime premiums for such off the clock hours, in addition to double the sum as liquidated damages.

132.   Said differently, while Defendants had a so-called policy to prevent and deter Program Managers from working off the clock, Defendants knowingly,

actively and/or constructively permitted Plaintiffs and all others similarly situated to suffer to work off the clock and without being paid for all such overtime hours while reaping the benefits of their unpaid labor and sweat.  Thus, Defendants knowingly didn't enforce its own alleged company policy, and knowingly disregarded it.

133.   The FLSA holds that such off the clock work Defendants knew of or had reasons to know but did nothing to preclude or halt, and which was encouraged and permitted is compensable overtime hours due to be paid to Plaintiffs and all others similarly situated who worked overtime hours without pay during the preceding 3 years, and up through to the date of trial.

134.   Defendants maintained a De Facto Policy to discourage reporting and claiming overtime hours, but meanwhile reaped the benefits of the additional work activities and work hours of the PM and therapists and the savings of many, many millions of dollars in labor costs.

135.   At any given time throughout the preceding 3-year period, Regional Managers and others in supervisory positions were aware of Plaintiffs McLaughlin, Vanderveen and other PM, as well as Lembke and others similarly situated working off the clock and that their time sheets were inaccurate and not capturing all their work hours.

136.   Similarly, at any given time throughout the preceding 3-year period, Regional Managers, as well as PM's were aware of Plaintiff Lembke and other similarly situated Therapists working off the clock and that their time sheets were inaccurate and not capturing all their work hours.

137.   Indeed, all PMs and Therapists including Plaintiffs were intimidated against reporting the extra compensable overtime hours and told to focus on their productivity goals and responsibilities while simultaneously being pressured to keep up or be subject to disciplinary action, including termination of their employment.

138.   The Defendants intentionally created a work environment that was oppressive, laced with fear and intimidation against reporting overtime hours and complaining about not being paid for all overtime hours, as claiming overtime hours worked would draw ire and scrutiny of management.

139.   Defendants have willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiffs and the Putative Class or Classes, comprised of all current and former similarly hourly, non-exempt PM (and all others in similar roles under various job titles) and Therapists, a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

140.   Defendants do not have a good faith basis for these described unlawful pay practices, such that Plaintiffs and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one and one half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

141.   Defendants knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees who comprise the Putative and proposed Class or classes.

142.   Defendants encouraged and pressured PM and therapists to work as many hours as they had to off the clock in order to handle all their job duties and responsibilities and has direct, if not constructive knowledge of PM and Therapists working overtime hours while off the clock.

143.   By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiffs and the class of similarly situated, the Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et seq., including 29 USC Sec. 211(c) and 215 (a).

144.   Defendants knew or should have known that the act of permitting PM and Therapists to work off the clock, including working on weekends, was insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

145.   To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs, and the class of similarly situated persons:  a) Willfully requiring PM to be on call and perform necessary staffing and scheduling work away from the office and on weekends without a means to report this time and;  b) maintaining a De Facto policy against reporting all overtime hours worked and working overtime hours on the clock; and c) permitting McLaughlin, Vanderveen, Lembke and all other similarly situated PM and Therapists to suffer to work off the clock without being paid for all hours worked.

146.   As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Plaintiff Class or classes, composed of all other present and former PM, Therapists and others similarly situated, have suffered economic damages by Defendants' failure to pay overtime compensation in accordance with FLSA §207.

147.   Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations committed by Defendants

pursuant to 29 U.S.C. §255(a), and Plaintiffs and those similarly situated are required to be paid for all unpaid overtime hours incurring over the preceding 3 years from the filing of this complaint.

148.   As a result of Defendants' unlawful acts and pay practices described herein, Plaintiffs and the Putative Class of all other similarly situated non-exempt employees have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of all such amounts, plus the payment of liquidated damages in amount equal to the overtime wages due and awarded, payment of prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

## <u>COUNT II</u>
## <u>FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED</u>

149.   Plaintiffs adopt and reallege paragraphs 1 through 96 as if fully set forth herein.

150.   Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

151.    However, and to the extent records are unavailable, Plaintiffs, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

152.   All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

153.   With respect to an employee subject to the FLSA provisions, the following records must be kept:

    a.    Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

    b.    Hour and day when work week begins;

    c.    Regular hourly pay rate for any week when overtime is worked;

    d.    Total hours worked each workday and each workweek;

    e.    Total daily or weekly straight-time earnings;

    f.    Total overtime pay for the workweek;

    g.    Deductions from or additions to wages;

    h.    Total wages paid each pay period; and

    i.    Date of payment and pay period covered

154.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *Also See, Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).

155.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act.   An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See, Wirtz v. First State Abstract Ins. Co.,* 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

156.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See, Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

157.   Defendants failed to accurately and contemporaneously record, track and report the Plaintiffs' and Class of similarly situated members', time and work hours as required under the FLSA and the related DOL regulations.

158.   Defendants failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

## COUNT III

## INDIVIDUAL CLAIMS OF ALL CURRENT AND FUTURE OPT IN PARTY PLAINTIFFS FOR VIOLATION OF THE OVERTIME REQUIREMENTS OF ILLINOIS MINIMUM WAGE LAW 820 ILCS § 105/1, et seq.  ; AND RULE 23 CLASS ACTION FOR ALL OTHERS SIMILARLY SITUATED

159.   Crystal Vanderveen, and all current and future FLSA section 216b collective action opt in Party Plaintiffs, including Renee Ramos, individually reallege and reincorporate all allegations contained in Paragraphs 1-96 as if incorporated.

160.  Plaintiff Vanderveen, individually and on behalf of all others similarly situated employees of Defendants who worked in the state of Illinois herein re-allege and incorporate all the allegations in paragraphs 1-96 if fully stated herein.

161.    Vanderveen and current opt in party Plaintiffs, Ramos, who worked in the state of Illinois for Defendants, assert their rights under Illinois state law, and for all future opt in Illinois party plaintiffs.

162.    All Plaintiffs who opt in and join the FLSA collective action become party plaintiffs similarly to the Named Plaintiffs and nothing more is required of them to present their claims, and further are required to present their other related claims under Illinois law in this action or such claims are waived and barred.

163.    Thus, hereinafter, all Plaintiffs who opt into the FLSA Section 216b collective action have a right and obligation to timely present all claims they have or could have asserted or filed against the Defendants, and thus includes their individual claims for violations of the IMWL; and regardless of whether a Rule 23 class is ultimately certified.

164.    The overtime law wages for hourly paid, non-exempt employees under Illinois law are identical in all respects to the FLSA, both of which mandate payment for all overtime hours worked.

165.   At all times relevant to the action, Defendants were an employer covered by the overtime mandates of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, et seq.

166.   Plaintiff Vanderveen and the Rule 23 Illinois Class members are employees entitled to the IMWL's protections as employees under this Act.

167.   Plaintiff Vanderveen was at all times material a member of the Illinois Class and was similarly situated to the members she seeks to represent.

168.   The IMWL entitles employees to compensation for every hour worked in a workweek, and time and one half their regular rate of pay for all overtime hours worked that Defendant knew or should have known about.

169.   Plaintiff Vanderveen, the opt in party Plaintiffs including but not limited to Ramos, and all others similarly situated were promised orally and in writings by Defendants that they were classified as non-exempt employees under the state and Federal wage laws and entitled to be paid premiums for all hours worked more than 40 in each workweek.

170.   The IMWL entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours

in excess of 40 hours per week." *See* 820 ILCS 105/4a (from Ch. 48, par. 1004a)

Sec. 4a. (1)

171.   Defendants violated the IMWL by regularly and repeatedly failing to
compensate Plaintiff Vanderveen, opt in party plaintiff Ramos and the Rule 23
Illinois Class for all overtime hours worked, meaning all hours worked more than
40 in any work week.  (820 ILCS 105/4a) (from Ch. 48, par. 1004a, Sec. 4a. (1)

172.   The foregoing conduct, as alleged, violates IMWL and any relevant
rules adopted by the state of Illinois.  At all relevant times, Defendants have been,
and continues to be, "employers" within the meaning of the IMWL.  At all
relevant times, Defendants employed "employee[s]," including each of the
members of the Illinois Class, within the meaning of the Illinois Wage Laws.

173.   The Illinois Wage Laws require an employer, such as Defendants, to
pay all compensation due to employees on their regular paydays, and the failure to
do so entitles Vanderveen, Ramos and all future opt in Party Plaintiffs as well as
the putative class of similarly situated, a penalty of 5% for each month such
wages remain unpaid.

174.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the Illinois Wage Class members for their hours worked in excess of forty hours per workweek by permitting them to suffer to work off the clock.

175.   Defendants willfully violated Illinois Wage Laws including, but not necessarily limited to, **820 ILCS 105/4a (from Ch. 48, par. 1004a), Sec. 4a.,** by failing to pay Plaintiffs Vanderveen, and all current opt in party plaintiffs including Ramos, all future opt in party Plaintiffs, as well as  the Illinois Class members, overtime premiums for all work performed in excess of forty hours in a workweek and hence, failing to pay all wages accrued to these workers on their regular scheduled paydays.

176.   As a result of Defendants' failure to record, report, credit, and furnish to each member of the Illinois Class their respective wage and hour records showing all wages earned and due for all work performed, Defendants failed to make, keep, preserve, and furnish such records in violation of **820 ILCS § 105/1 et seq**.

177.   Plaintiff Vanderveen and the Illinois Class seek recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

178.   Plaintiff Vanderveen, the current and future opt in party Plaintiffs including Ramos, and the Illinois Class seek damages in the amount of the respective unpaid overtime wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

179.   As a result, Illinois Class members have and will continue to suffer loss of income and other damages.   Accordingly, Vanderveen, all current and future opt in party plaintiffs from Illinois including Ramos, and the Rule 23 Illinois Class are entitled to recover their unpaid wages owed, plus 3 times the sum owed as treble damages, a 5%  penalty and interest for each month such wages were not timely paid, plus reimbursement and recovery of their incurred litigation costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**WHEREFORE,** Plaintiffs CHRSTINE MCLAUGHLIN,  CRYSTAL VANDERVEEN and JUSTIN LEMBKE, individually, and on behalf of all other

similarly situated, past and present Program Managers and Therapists, seek the following relief:

a.  Designation of this action as a collective action and conditionally and finally certify this action as such pursuant to the 11th Cir 2 stage process;

b.  That Plaintiffs CHRSTINE MCLAUGHLIN, CRYSTAL VANDERVEN and JUSTIN LEMBKE be allowed to send notice of this collective action under court supervision to all past and present PROGRAM MANAGERS (and all other similar positions under different job titles) and Therapists employed by Defendants at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class; and further ORDER Defendants to produce a list of all similarly situated therapists and program managers working in any facility in the United States and its Territories within the preceding 3 years to the present;

c.  Designate Plaintiffs, CHRISTINE MCLAUGHLIN, CRYSTAL VANDERVEEN and JUSTIN LEMBKE as Representatives of the Collective members and opt in party plaintiffs for purposes of

engaging in mediation, with the authority to execute any Collective or Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.    That all past and present Program Managers and Therapists be informed of the nature of this collective action, and the similarly situated employee's right to join this lawsuit if they believe that they worked overtime hours without being paid premiums or any pay for all such hours worked;

e.    That the Court find and declare Defendants in violation of the overtime compensation provisions of the FLSA;

f.    That the Court find and declare Defendants' violations of the FLSA were and are willful;

g.    That the Court enjoin Defendants, under 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Putative Class or Collective;

h.    That the Court award to Plaintiffs, CHRSTINE MCLAUGHLIN, CRYSTAL VANDERVEEN and JUSTIN LEMBKE, and all others similarly situated who consent to join this action as party plaintiffs, overtime compensation at a rate of one and one half time their regular

rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years up through the date of trial;

i.  That the Court award all Plaintiffs an equal sum in overtime wages as liquidated damages pursuant to FLSA 216b;

j.  That the Court award Plaintiffs, CHRSTINE MCLAUGHLIN, CRYSTALL VANDERVEEN, JUSTIN LEMBKE and the Plaintiffs who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

k.  That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendants from further violating the FLSA;

l.  Award Prejudgment and post-judgment interest, as provided by law: and;

m.  That the Court certify the proposed putative Illinois class pursuant to Rule 23 and award damages to all those similarly situated, including treble damages and penalties of 5% for each month such awarded overtime wages are past due;

n.  That the Court appoint Vanderveen as class representative of the Illinois class and the lawyers of Feldman Legal Group, including attorney Mitchell Feldman, Esq., as class counsel for the Illinois class;

o.  Award Plaintiff Vanderveen, and all current and future opt in Plaintiffs who were employed in the state of Illinois, treble damages for all overtime wages awarded plus 5% penalty for each month such wages were unpaid;

p.  That the court award attorney's fees and costs and expenses of litigation incurred pursuant to IMWL;

q.  That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted this 10th day of February, 2022.

*/s/Mitchell L. Feldman*
**Mitchell L. Feldman, Esq**
Florida Bar No. 0080349
FELDMAN LEGAL GROUP
6916 West Linebaugh Avenue, # 101
Tampa, Florida 33625
Tel: (813) 639-9366
Fax: (813) 639-9376
Mfeldman@flandgatrialattorneys.com
Mail@feldmanlegal.us
*Attorneys for Plaintiffs and the classes of*
*similarly situated*